IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:06-CV-199-WW

JUDY E. FOWLER, )
)
    Plaintiff, )
)
       v. ) **ORDER**
)
MICHAEL ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )
_____ )

    This matter is before the Court on the parties' cross motions for judgment on the pleadings **[DE's 21-22 & 25-26]**. The time for any further responses or replies has expired. Accordingly, the matter is now ripe for adjudication. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for disability insurance benefits ("DIB"). This case is before the undersigned Magistrate Judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1) **[DE-35]**.

**Statement of the Case**

    Plaintiff applied for DIB on April 7, 2003, alleging that she became disabled on September 19, 2002 (Tr. 12-13). Plaintiff's application was denied at the initial and reconsideration levels of review. *Id.* A hearing was later held before an Administrative Law Judge ("ALJ") on July 28, 2004. In an opinion dated June 13, 2005 the ALJ determined that

1

Plaintiff was disabled from the period of September 19, 2002 to January 1, 2004, but not thereafter. *Id.* at 12-23. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on July 12, 2006, rendering the ALJ's finding as Defendant's final decision. *Id.* at 4-7. Plaintiff filed the instant action on September 15, 2006 **[DE-1]**.

## Standard of Review

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff

2

was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## **Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f). Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ stated that Plaintiff had not engaged in substantial gainful activity since her alleged onset date (Tr. 13). At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical spine was a severe impairment. *Id.* at 17. In completing step three, however, the ALJ determined that this impairment was not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. *Id*.

The ALJ then proceeded with step four of his analysis and determined that, since January 2, 2004, Plaintiff retained the residual functional capacity ("RFC") to perform light

3

work activity. *Id*. at 18. Based on this finding, the ALJ found that Plaintiff could not perform any of her past relevant work. *Id*. at 20. Finally, at step five the ALJ concluded that Plaintiff was not precluded from performing other work but rather that there were a significant number of jobs in the national economy that Plaintiff could perform *Id.* at 21-22. Accordingly, the ALJ determined that Plaintiff was not under a disability during the relevant time period. *Id.* In making these determinations, the ALJ cited substantial evidence. This substantial evidence included a thorough examination of the medical record, which shall now be summarized.

Plaintiff alleges that her symptoms began on May 10, 2002 when she injured her neck in a fall. *Id.* at 14, 53. As a result of this incident, Plaintiff complained of pain in her upper back and right arm at a level between six and eight on a pain scale of one to ten. *Id.* at 101-102. She described the pain as "throbbing" and "aching". *Id.* During an August 22, 2002 examination, Dr. David B. Kee noted that Plaintiff also complained of paresthesias radiating down her right arm. *Id.* at 164. The examination also revealed diminished pinprick perception in the C5 dermatome. *Id.* However, Plaintiff's motor strength was five out of five in her upper and lower extremities. *Id.* She also had a good range of motion of the cervical spine. *Id.* at 165. A CT/myelogram confirmed a disc herniation at the C4-5 level of Plaintiff's spine "with some mild effacement of the anterior cord and right C5 nerve root." *Id.* Plaintiff was initially treated with a cervical epidural injection. *Id.* at 97. Ultimately, Dr. Kee performed an anterior cervical disc fusion of Plaintiff's C4-5 vertebrae on September 23, 2002. *Id.* at 152, 163, 445-446.

Post-operatively, Plaintiff initially did "quite well." *Id.* at 163. On October 10, 2002, she denied any severe radiating pain down her right arm. *Id.* She also denied any upper extremity numbness or weakness. *Id.* Plaintiff was instructed that she could increase her activities to include lifting up to 15 pounds. *Id.* at 163. However, on December 18, 2002, Dr. Kee noted that Plaintiff continued "to have the same symptoms as preop.." *Id.* at 161. Accordingly, Dr. Kee referred Plaintiff to Dr. Michael McCaffrey for further evaluation and treatment. *Id.* at 158. Dr. McCaffrey performed an electrophysiologic evaluation on December 26, 2002, which "demonstrated mild bilateral carpal tunnel syndrome but no evidence of an ongoing radiculopathy." *Id.* at 160.

Dr. John C. Liguori evaluated Plaintiff on April 22, 2003. *Id.* at 147-148. At that time, Plaintiff complained of pain in her right shoulder and right upper arm. *Id.* at 147. Examination revealed cervical strain in the anterior right neck and significant tenderness in the periscapular muscles. *Id.* at 147-148. However, Plaintiff had no weakness or numbness in her upper extremities. *Id.* at 148. Her gait was normal. *Id.* Ultimately, Dr. Liguori assessed Plaintiff with a "probable traction injury to the right C-5 nerve root." *Id.* He noted that this condition was "most likely mild and should recover with time." *Id.* Plaintiff was also diagnosed with "chronic pain unrelieved with current medications" which was treated with a Duragesic patch and outpatient manual therapy. *Id.* On May 20, 2003, Dr. Liguori stated that the physical therapy was helping Plaintiff, although Plaintiff did not like the side effects of the Duragesic patches. *Id.* at 146. Her strength and posture were normal at this time, and Plaintiff indicated that her pain fluctuates between a very high level and a tolerable

level. *Id.* On July 1, 2003 it was noted that Plaintiff was still complaining of chronic pain in her right shoulder. *Id.* at 145.

A State Agency consultant assessed Plaintiff's RFC on June 25, 2003. *Id.* at 136-144. It was determined that Plaintiff could: 1) occasionally lift and/or carry 20 pounds; 2) frequently lift and/or carry 10 pounds; 3) stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; 4) sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and 5) push and/or pull with no limitations other than those listed for lifting and carrying. *Id.* at 137. No postural, visual, or communicative limitations were noted. *Id.* at 138-140. Plaintiff was limited in reaching in all directions, but otherwise had no manipulative limitations. *Id.* at 139. Other than avoiding concentrated exposure to hazards such as machinery and heights, no environmental limitations were noted. *Id.* at 140.

With regard to the State Agency consultant's RFC assessment, the ALJ noted:

> For the period from September 19, 2002 to January 1, 2004, the undersigned accords the medical opinions of the state agency medical consultants minimal weight, as their opinions are inconsistent with the weight of the medical evidence. The undersigned notes that during this time period, the claimant was recuperating after two fusions of her cervical spine. As of January 2, 2004, the undersigned accords the medical opinions of the state agency medical consultants some weight, even though they did not have the opportunity to personally examine the claimant, as their medical opinions, albeit using a different rationale, also support a finding of "not disabled."
> *Id.* at 20.

On May 29, 2003 Plaintiff was examined by Dr. Essam S. Eskander for complaints of right arm numbness, neck pain and stiffness. *Id.* at 130-133. Dr. Eskander noted that Plaintiff had no difficulty with ambulation, although she did have some difficulty getting up from the examination table. *Id.* at 132. Plaintiff demonstrated a 5/5 handgrip bilaterally and

6

muscle power of 5/5 in all extremities. *Id.* She had a decreased range of motion of the cervical spine. *Id.* Based on this examination, Plaintiff was diagnosed with "herniated disc disease of the lower extremity, post surgery" and persistent neck pain. *Id.* It was also noted that Plaintiff would have difficulty lifting heavy objects. *Id.*

Plaintiff was also treated by Dr. Sunil J. Patel. Dr. Patel initially treated Plaintiff with conservative measures, which included a soft collar and physical therapy. *Id.* at 281. None of these measures alleviated Plaintiff's pain. *Id.* Accordingly, on December 10, 2003, Plaintiff underwent "C5-C6 anterior cervical diskectomy, interbody fusion with arthrodesis, anterior instrumentation at C5-6, and removal of C4-5 anterior instrumentation." *Id.* at 197. Plaintiff tolerated the procedure well and there were no complications. *Id.*

On October 24, 2003, Dr. Kee wrote a letter to Plaintiff's attorney in which Dr. Kee conceded that he was "not trained in the evaluation of 'disability'." *Id.* at 149. He also noted that he had not prescribed any medications for Plaintiff "in quite some time." *Id.* Nonetheless, Dr. Kee opined that Plaintiff "had a 15% permanent impairment rating relative to the cervical spine (expressed as a percentage of the entire person)." *Id.* Dr. Kee declined to assess whether Plaintiff was capable of engaging in substantial gainful employment. *Id.*

Plaintiff stated on December 18, 2003 that she did not have any neck pain and had decreased pain in the rhomboid region. *Id.* at 173. She also denied any radiculopathy. *Id.* Examination revealed 5/5 motor strength and intact sensation. *Id.* After the examination, Plaintiff was instructed to continue wearing her soft collar for six weeks. *Id.*

On February 19, 2004 Plaintiff complained to a nurse of lower neck pain at a level of

7

eight out of ten. *Id.* at 277. However, a treatment note from the same day indicated that Plaintiff complained to Dr. Patel only of "some pain" in her rhomboid region, and that her flexion/extension films showed "no evidence of instability". *Id.* at 276. These films also demonstrated good fusion. *Id.* Dr. Patel opined that it was appropriate to wean Plaintiff off of her soft collar. *Id.* Plaintiff's condition had improved enough that Dr. Patel specifically released Plaintiff from his care. *Id.* Likewise in a letter to Dr. Grubb written the same day, Dr. Patel indicated that Plaintiff was "doing very well" and that her upper back pain had completely resolved. *Id.* at 275. Plaintiff's neck pain was described as "quite tolerable". *Id.* He further predicted that this neck pain would eventually improve. *Id.* Plaintiff was advised by Dr. Patel to avoid lifting anything heavier than 50 pounds. *Id.*

Nonetheless, despite his previous positive assessment, on March 24, 2004 Dr. Patel stated in a letter to Plaintiff's attorney that Plaintiff had been totally disabled since her onset date and would remain so for at least one year. *Id.* at 170. He also reported that Plaintiff could not lift more than 50 pounds and that her persistent neck pain prevented her from doing any physical work. *Id.* Finally, Dr. Patel indicated that Plaintiff's neck mobility was impaired due to the two fused levels in her spine. *Id.* This opinion is provided in four numbered paragraphs, each of which only consist of one or two sentences. *Id.* None of the paragraphs refer back to any specific medical records. *Id.*

The ALJ made the following observations with regard to Dr. Patel's findings:

> In March 2004, Dr. Patel opined that the claimant was totally disabled for at least one year from her onset date. This indicates that Dr. Patel believed the

8

claimant was disabled from September 19, 2002 to September 19, 2003[1] . . .
The undersigned agrees with Dr. Patel's opinion of temporary disability and,
as such, accords it controlling weight. Although Dr. Patel's lifting limitation
of no more than 50 pounds gives the claimant a more expansive lifting
restriction than the undersigned, his opinion supports a finding of "not
disabled," after January 2, 2004.
*Id.* at 19.

Dr. Grubb completed a "Physician's Report" for The Standard Insurance Company on March 10, 2004. *Id.* at 167-169. In this report, Dr. Grubb indicates that Plaintiff: 1) had a current range of motion of between 41-60% in her neck; 2) could sit, stand, and walk for a total of three hours each; 3) could use her hands repetitively for simple grasping, fine manipulation, and finger dexterity; 4) could not push or pull; and 5) would never be able to return to work. *Id.* On March 15, 2004, Dr. Grubb examined Plaintiff. *Id.* at 187. He noted that Plaintiff's neck pain was now bearable and that Plaintiff's back pain had completely resolved. *Id.* According to Dr. Grubb, Plaintiff could not "return to her work as a cafeteria worker" and was "not capable of any kind of meaningful heavy work." *Id.* He fails to specify whether he believed Plaintiff could perform lighter categories of work. Dr. Grubb stated on May 21, 2004 that Plaintiff's "neck had been fixed but now she has a lot of myalgic pains." *Id.* at 185. Plaintiff also complained of night terrors, but otherwise she asserted that she felt relatively well. *Id.* When Plaintiff was examined by Dr. Grubb on June 21, 2004, he observed that Plaintiff's "neck still has the restrictive ROM but her spasm in her back is

---

[1] The undersigned notes that this is an incorrect reading of the March 24, 2004 letter. Even in light of this misreading, there is still substantial evidence to support the ALJ's determination that Plaintiff was only disabled for a closed period of time. Indeed, Dr. Patel's own treatment notes support this. Likewise, there is substantial evidence to support the ALJ's decision to give Dr. Patel's opinion less than controlling weight for any period after January 2, 2004.

9

better." *Id.* at 180. Indeed, during this examination Plaintiff's reported symptoms consisted only of "hot flushes." *Id.* During a February 22, 2005 examination, Plaintiff did not report any pain, but complained of hot flashes, cough and a sore throat. *Id.* at 315. No mention is made of Plaintiff's "myalgic pain" and the Plaintiff's usual assessment of "fybromyalgia" does not appear on this treatment note. *Id.* On the contrary, this treatment note indicates that Plaintiff is "[a]lert . . . [and] active." *Id.* Likewise, on April 4, 2005 Plaintiff informed Dr. Grubb that her pain was "90% less than it was before surgery." *Id.* at 317. In a treatment note dated May 2, 2005, Dr. Grubb noted that Plaintiff "has been doing better" and "has had less muscle spasms." *Id.* at 318.

The ALJ made the following observations with regard to Dr. Grubb's findings:

> Dr. Grubb opined that the claimant could not return to her past work as a cafeteria worker and was not capable of heavy work. The undersigned is in agreement with this opinion. As to Dr. Grubb's restrictions of March 15, 2004 they are accorded minimal weight as they are unsupported by the medical evidence and the claimant's activities of daily living. While Dr. Grubb indicated that the claimant was restricted to no pushing or pulling with the right and left hand, treatment records indicated, and the claimant testified to, only a problem with her right hand. Dr. Grubb also limited the claimant's walking; however, her daily activities included shopping and walking around the house. Dr. Grubb also limited the claimant to lifting 10 pounds occasionally. Again, there are no treatment records to support this restriction. In fact, the claimant's specialist, Dr. Patel, opined that the claimant was capable of lifting up to 50 pounds . . . While Dr. Grubb indicated on the insurance form that he never anticipated the claimant to return to work, his treatment records fail to support this opinion. In fact, treatment records revealed reports of bearable pain and no longer having radiating back pain like before. In May 2004, the claimant was doing relatively well except for myalgic pain in her back, arms, and legs. Inasmuch as the weight of the medical evidence as a whole, including some of his own treatment notes, fail to support this opinion, the undersigned does not accord it controlling weight. *Id.* at 19-20(internal footnote omitted).

10

During the hearing in this matter, Plaintiff testified that she has not worked since September 19, 2002 after she stopped working at a school cafeteria. *Id.* at 441. She stated that she injured her neck in May 2002 after falling from her bed. *Id.* at 442-444. After her first surgery in September 2002 she continued to have severe pain in her right arm and shoulder and also had numbness in her arm. *Id.* at 446-446. These symptoms were initially treated with a pain management regimen, injections and physical therapy. *Id.* at 446-448. Plaintiff asserted that the physical therapy actually made her pain worse. *Id.* at 447. She then testified that she underwent a second surgery in December 2003. *Id.* at 448. According to Plaintiff, her "radiating pain" was better and she no longer had numbness in her arm. *Id.* at 449. Plaintiff described her pain as a dull ache that stretched from her bra strap to her neck and measured a six or seven on a scale from one to ten. *Id.* at 450. She stated that she was taking Elavil, Vioxx, and Flexeril at the time of the hearing. *Id.* at 452. Although these medications help her pain, they also make her drowsy and negatively affect her concentration. *Id.* at 452, 457. In describing her daily activities, Plaintiff related that she was capable of: 1) dressing herself; 2) walking around the house for approximately 500 yards; 3) sitting and/or standing for a couple of hours at a time; 4) cooking with assistance; 5) washing dishes with assistance; 6) attending Sunday School; 7) driving within a three mile radius of her house; and 8) shopping for groceries with assistance. *Id.* at 454-459. Plaintiff indicated that she could no longer engage in hobbies such as needlepoint or gardening. *Id.* at 453.

With regard to Plaintiff's testimony, the ALJ stated the following:

11

The undersigned finds the claimant's testimony with regard to her condition and functional limitations from September 19, 2002 to January 1, 2004 to be essentially credible and supported by the medical evidence of record. The claimant has described daily activities which were quite limited and which were consistent with her complaints of disabling symptoms and limitations and with her medical diagnoses. There was no indication in the medical evidence of record that the claimant was exaggerating her symptoms or malingering.

The undersigned has also carefully considered the claimant's statements about her symptoms after January 1, 2004 with the rest of the relevant evidence in the case record. The undersigned finds that the claimant's allegations after January 1, 2004 to be inconsistent with the medical evidence of record, the claimant's reports to her physicians, and the treatment sought and received. Specifically, the claimant's reports to her treating physicians fail to match the severity of her complaints made to the Administrative Law Judge at her hearing, which suggests symptom magnification. Despite her testimony of severe and constant arm pain, and pain from her mid back to right shoulder, treatment records revealed that after her second fusion, the claimant did not complain of such severe pain to her physicians. In fact, in February 2004, the claimant reported no neck pain, decreased pain in the rhomboid region and no radiculopathy and her intrascapular pain had completely resolved. While she had slight pain at the base of her neck, it was noted that the pain was tolerable and was expected to improve. Furthermore, she reported to Dr. Grubb in March 2004, that her pain was bearable and she was no longer having pain down her back like before. Although the claimant testified to numbness in the thumb, second and middle fingers of her right hand and an inability to grip, treatment records revealed that the claimant's numbness completely resolved after her first fusion. Although she reported right arm numbness to Dr. Eskander, his examination revealed 5/5 hand grip bilaterally. Furthermore, the claimant has testified to an ability to drive and there is no indication in the record that the claimant requires any help with her personal needs. These actions require some hand manipulation. As to the claimant's testimony that her medication makes her drowsy and dulls her concentration, the record does not indicate that she reported these specific side effects to her physicians. The undersigned is aware that the claimant reported unspecified side effects from Duragesic patches, but her medication was changed and there were no further complaints. Moreover, the undersigned Administrative Law Judge notes that during her hearing the claimant was able to concentrate and pay attention without any apparent problem. Despite her testimony to problems with blurred vision, the claimant never complained of this to her physicians. Moreover, she testified to an ability to drive and do some reading, which indicates that the

12

claimant's vision problem was not as serious as she alleged. Therefore, the undersigned has determined that the claimant's complaints are inconsistent with the treatment records . . .

Despite the claimant's complaints of severe pain and functional limitations, the evidence reveals that she has retained a significant range of activities of daily living. Specifically, she was able to cook, do the dishes, drive, grocery shop and visit with her family. These activities are inconsistent with her complaints of severe limitations.
*Id.* at 16-17.

Based on this record, the ALJ made the following observations regarding the severity of Plaintiff's impairments as well as Plaintiff's RFC:

After a thorough review of the evidence of record, the undersigned finds that for the period from September 19, 2002 to January 1, 2004, the claimant was unable to sustain work-related physical and mental activities in a work setting on a regular and continuing basis . . . Such a finding is well supported by the evidence of record . . . [a]s a result of her continuing neck pain from degenerative disc disease, the claimant required a fusion at C4-5 in September 2002 and a subsequent fusion at C5-6 in December 2003 . . .

However, as of January 2, 2004, the undersigned finds that there has been a showing of decrease in medical severity of the claimant's degenerative disc disease of the cervical spine, and those improvements are related to the claimant's ability to work . . . Following her second fusion in December 2003, the claimant began to improve almost immediately. Treatment notes from December 2003 revealed that the claimant had decreased pain in the rhomboid region, no neck pain and no radiculopathy. Examination revealed 5/5 motor strength and intact sensation. In February 2004, the claimant was doing very well and her intrascapular pain had completely resolved. While she has slight pain at the base of her neck, it was noted that it was quite tolerable and was expected to get better. X-rays revealed good fusion and no evidence of instability and she was discharged from Dr. Patel's care. . . . In March 2004, the claimant reported bearable pain and in May 2004, it was noted she was doing relatively well . . .

Therefore, as medical improvement has occurred, which is related to the claimant's ability to perform work, the undersigned finds that beginning January 2, 2004, the claimant has the residual functional capacity to perform

13

> light work activity. Specifically, she can only lift and carry 20 pounds occasionally and 10 pounds frequently, stand for 6 hours in an 8-hour workday, walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. Due to her cervical degenerative disease, the claimant is limited to occasional pushing/pulling with the upper extremities; occasional climbing of ramps and stairs; no climbing of ladders, scaffolds, and ropes; and frequent balancing, stooping, kneeling, crouching, and crawling . . .
>
> The claimant suffers from degenerative disc disease of the cervical spine status post fusion time two, which is a severe impairment. Following her second fusion in December 2003, the claimant began to improve almost immediately . . . Nevertheless, the medical evidence does indicate that the claimant has required some treatment and experienced some limitations. Therefore, the undersigned has limited the claimant . . . Because of the claimant's limited neck mobility, she is also limited to occasional overhead reaching.
>
> Due to the claimant's testimony of numbness of the thumb, second finger and middle finger of her right hand, the claimant is limited to occasional fingering and feeling with the right upper extremity. Due to the claimant's allegations of side effects from her medications, she is limited to no exposure to hazards. Based on the claimant's alleged pain and medications, she is limited to detailed but not complex light work.
> *Id.* at 18-19.

A vocational expert ("VE") testified at the administrative hearing. *Id*. at 463-471. The VE testified that a person of Plaintiff's RFC, age, education and work experience could perform the occupations of: 1) hotel desk clerk; 2) cashier; and 3) sales clerk. *Id*. at 465-466. Each of these jobs exist in significant numbers in the national economy. *Id*. Accordingly, the ALJ determined that Plaintiff was not disabled anytime after January 2, 2004. *Id.* at 21-22.

Based on the forgoing record, the Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting

14

evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff lists several assignments of error, all of which essentially contend that the ALJ improperly weighed the evidence before him. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court to do, her assignments of error are meritless. Nonetheless, the undersigned shall now address Plaintiff's specific assignments of error.

**The ALJ fully and fairly developed the record**

Plaintiff argues that the ALJ failed to properly develop the record. First, the undersigned notes that the ALJ cited ample medical evidence in reaching his decision. That evidence has been summarized *supra*. Nonetheless, Plaintiff asserts that the ALJ had a duty to further supplement the record. To this end, Plaintiff later submitted additional treatment notes from Dr. Grubb to the Appeals Council after the ALJ had rendered his decision. The Appeals Council considered this newly submitted evidence but denied Plaintiff's request for review. The Fourth Circuit has stated that, generally, "the regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision . . ." Hollar v. Commissioner

15

of Social Security Administration, 194 F.3d 1304 (4th Cir. 1999)(unpublished opinion)(*citing* 20 C.F.R. 404.970(b)(1999)). Moreover, Plaintiff has provided little argument as to how these medical reports should have affected the ALJ's assessment. Regardless, "[a]lthough the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, . . . [the ALJ] is not required to function as the [plaintiff's] substitute counsel, but only develop a reasonably complete record." Bell v. Chater, 1995 WL 347142 (4th Cir. 1995) * 4 (unpublished opinion)(*citing* Clark v. Shalala, 28 F.3d 828, 830-831 (8th Cir. 1994))(internal citations and quotations omitted). Ultimately, Plaintiff carries the burden of establishing a prima facie entitlement to benefits and bears the risk of nonpersuasion. *Id.* (internal citations and quotations omitted). Here, the ALJ had before him sufficient facts to determine the central issue of disability, and therefore the instant assignment of error is meritless.

**The ALJ properly weighed all the medical evidence**

Plaintiff also contends that the ALJ failed to properly weigh the medical record as a whole. This assertion is inaccurate. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245 (Slip Op. at 8)(W.D.Va. 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the

16

record supports his findings." *Id.* (internal citations omitted).

While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209 (4th Cir.1999) (unpublished opinion)(internal citations omitted).

Here, the ALJ sufficiently explained his rationale for weighing the medical record and the opinions contained therein. These explanations were supported by substantial evidence. Accordingly, this assignment of error is meritless.

**The ALJ properly assessed Plaintiff's credibility**

Plaintiff assigns error to the ALJ's determination regarding the credibility of Plaintiff's testimony. The ALJ's findings with regard to Plaintiff's subjective complaints

17

have already been summarized. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments, including pain, in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records, as outlined *supra.*, constitute substantial evidence which support this assessment. Accordingly, this assignment of error is meritless.

**The ALJ properly assessed Plaintiff's RFC**

Plaintiff argues that there was not substantial evidence to support the ALJ's finding regarding Plaintiff's RFC. An individual's RFC is what that person can still do despite physical and mental impairments. 20 C.F.R. §§ 404.1545, 416.945(a). RFC is determined at the fourth step of the sequential evaluation process. The argument supporting this assignment of error consists primarily of highlighting evidence the ALJ allegedly "failed" to consider. Once again, Plaintiff asks this Court to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. The undersigned declines to do so.

The medical record relied upon by the ALJ has already been summarized. This medical record contained substantial evidence to support each of the ALJ's findings, including his assessment of Plaintiff's RFC. Because there is substantial evidence in the

18

Case 4:06-cv-00199-WW   Document 36   Filed 03/21/08   Page 18 of 20

record to support the ALJ's RFC determination, this assignment of error is without merit.

**The ALJ presented a proper hypothetical to the VE**

Plaintiff next contends that the ALJ presented an improper hypothetical to the VE prior to the VE's testimony. An ALJ has "great latitude in posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." Koonce, 166 F.3d at 1209(unpublished opinion). The ALJ is required only to "pose those [hypothetical questions] that are based on substantial evidence and accurately reflect the plaintiff's limitations . . ." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000). Here, the hypothetical question posed to the VE by the ALJ was based on a RFC determination supported by substantial evidence and therefore accurately reflected all of Plaintiff's limitations. Therefore, it was not error for the ALJ to rely upon the VE's testimony that there were other jobs the national economy which Plaintiff could perform. This assignment of error is meritless.

## Conclusion

For the reasons discussed above, it is HEREBY ORDERED that Plaintiff's Motion for Judgment on the Pleadings **[DE-21]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-25]** be GRANTED, and the final decision by Defendant be AFFIRMED.

SO ORDERED in Chambers at Raleigh, North Carolina this 19th day of March, 2008.

_____

William A. Webb
U.S. Magistrate Judge